```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

GREG WALTER SCHOENLEIN,         )   CIV. NO. 08-00165 SOM-BMK
                                )
            Plaintiff,          )
                                )
       vs.                      )   ORDER DISMISSING COMPLAINT
                                )
FRANCIS SEQUEIRA, DR.           )
PADERES, SERGEANT CARTER,       )
                                )
            Defendants.         )
_____ )
```

## ORDER DISMISSING COMPLAINT

On April 14, 2008, Plaintiff Greg Walter Schoenlein, a pre-trial detainee proceeding *pro se* and *in forma pauperis*, brought this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Schoenlein alleges that prison officials and health care providers violated his constitutional rights by failing to prevent his slip and fall in his cell, and by failing to provide him with adequate medical treatment thereafter.

Schoenlein names the Halawa Correctional Facility ("HCF") Warden, Francis Sequeira, HCF Adult Correctional Officer ("ACO") Sergeant Carter, and HCF Physician Dr. Paderes as Defendants to this suit, in their official and individual capacities. Schoenlein seeks $10 million in compensatory and punitive damages, and an order granting him medical treatment of his choice from a non-prison provider.

## I. BACKGROUND

Schoenlein was housed in the HCF Medium Security Special Holding Unit from November 9, 2007, until December 5, 2007. Schoenlein says that the ceiling leaked and rainwater accumulated on his cell floor during rain storms. Schoenlein alleges that Carter and Sequeira were aware that the ceiling leaked in his cell when it rained and that the periodically wet cell floor presented a safety issue "of possible electrocution and slip and fall incidents." (Comp. 5 ¶ 3.)

Schoenlein claims that, on December 5, 2007, at 6:30 a.m., he slipped and fell in a puddle when he stood up to retrieve his breakfast tray, injuring his knee. Schoenlein initially refused treatment, but later felt pain and requested medical care from the duty nurse. At approximately 8:30 a.m., Schoenlein was given and filled out an incident report, and within an hour was taken to the HCF Medical Unit. He was also transferred from the cell with the leaking roof to another cell.

At the Medical Unit, Dr. Dewitt examined Schoenlein, noted that his right knee was swollen but did not appear broken, and stated that an x-ray should be performed. It is not evident from the Complaint if an x-ray was taken at that time. Dr. Dewitt prescribed Schoenlein 800 mg. of Motrin, and an ACE bandage.

Schoenlein states that his knee remained swollen and painful throughout December, and that he "made numerous medical request[s]." (Comp. 5A.) He does not say whether prison medical personnel responded to these requests, but admits that he was seen by Dr. Salandra on December 27, 2007. Dr. Salandra told Schoenlein he had damaged the knee cartilage and administered a steroid injection to Schoenlein's knee. Schoenlein says that he requested a cane, knee brace, or crutches, but Dr. Salandra told him these items were prohibited at HCF because of security concerns.

Schoenlein states that he voiced numerous medical requests and complaints in January and February 2008 concerning his injury, but he does not say whether he was seen by HCF medical personnel during those months.

On February 19, 2008, Schoenlein was examined by Dr. Paderes. Schoenlein told Dr. Paderes that he was still in constant pain, his knee was still swollen and made "crunching" noises, he had difficulty walking, and he had "fallen 6 more times from the knee injury," suffering lacerations to his right shin. (Comp. 5-B.) Dr. Paderes said that he would confer with Drs. Dewitt and Salandra for a "group diagnosis." (Comp. 5-B)

Schoenlein took his complaints regarding insufficient medical care to the Office of the Ombudsman. Schoenlein says that he received a telephone call from the Ombudsman's

investigator, "Alfred," on April 4, 2008.  Alfred told Schoenlein that Dr. Paderes "felt nothing was wrong with plaintiff[']s knee and that Dr. Paderes at this time will not render medical care or treat the plaintiff[']s injury."  (Comp. 5-B.)  Because of this, Alfred informed Schoenlein that he was closing the investigation.

Schoenlein claims that Warden Sequeira and Sergeant Carter, who were aware of the leaking ceiling in his cell and knew that it created a dangerous condition, violated the Eighth Amendment through "Deliberate indifference and Reckless Disregard."  Schoenlein alleges that Dr. Paderes's refusal to continue treating his knee and to refer him to an outside medical provider also violated the Eighth Amendment.

## II. **<u>LEGAL STANDARD</u>**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(b) & 1915A(b).

A plaintiff fails to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to

relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Palmer v. Roosevelt Lake Log Owners Ass'n, Inc.*, 651 F.2d 1289, 1294 (9th Cir. 1981). For screening purposes, the court accepts as true the allegations of the complaint. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976). The court also construes the pleading in the light most favorable to the plaintiff and resolves doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court, however, is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

The court must construe pro se pleadings liberally and afford the pro se litigant the benefit of any doubt. *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "Unless it is absolutely clear that no amendment can cure the defect . . . , a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

**III.   DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *West v. Atkins*, 487 U.S. 42, 48 (1988). There are several infirmities with Schoenlein's Complaint, as discussed below.

A.   Defendants Are Immune From Suit for Damages in their Official Capacities.

The court lacks jurisdiction over Schoenlein's claims for damages against Defendants named in their official capacities.  As Defendants are state officials, those claims are barred by the Eleventh Amendment, which "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 267-68 (1997).  Defendants are immune from suit for damages in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

The Eleventh Amendment does not bar all claims against prison officials in their official capacities, and it does not bar claims against state officials sued in their individual

capacities.  While state officials acting in their official capacities may not be sued in federal court for damages or violations of state law, they may be sued in federal court for prospective injunctive relief sought in connection with alleged violations of federal law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.  Schoenlein seeks prospective injunctive in the form of an order allowing him to receive medical care from an outside provider.  Claims for damages against Sequeira, Carter, and Paderes in their official capacities are DISMISSED.[1]

B.   <u>Negligence Does Not State a Claim Under § 1983.</u>

Pretrial detainees, like Schoenlein, are protected by the Due Process Clause, although courts borrow from Eighth Amendment jurisprudence when analyzing pretrial detainees' rights.  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  To prevail on an Eighth Amendment claim against a prison official, an inmate must demonstrate that the prison official's acts or omissions deprived him of the minimal, civilized measure of life's necessities (the objective requirement), and that the prison official acted with deliberate

---

[1] The Eleventh Amendment is not a bar that may be cured by the filing of an amended complaint.  While this order gives Schoenlein leave to amend the Complaint, he may not reassert claims dismissed here on the ground that the claims are barred by the Eleventh Amendment.  That is, he may not reassert damage claims against Defendants in their official capacities.

7

indifference to the inmate's health or safety (the subjective requirement).  *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (en banc).  Pretrial detainees must show deliberate indifference or reckless indifference, i.e., conduct so reckless or wanton as to be tantamount to a desire to inflict harm and that therefore is equivalent to a deliberate choice.  *See Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991).

      Neither negligence nor gross negligence is actionable under § 1983 in the prison context.  *See Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence"); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner).  The applicable standard is one of deliberate indifference to an inmate's health or safety under the Eighth Amendment.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

      Schoenlein alleges that the ceiling in his cell leaked periodically when it rained, accumulating water on the floor.  He claims that Defendants Sequeira and Carter were aware of the leak and did nothing to prevent the allegedly dangerous condition, and thus, did nothing to prevent Schoenlein's fall.  Schoenlein admits, however, that Sergeant Carter had another inmate mop up

the water in Schoenlein's cell on at least one occasion. (*See* Comp. 5-C.)

These facts, construed in the light most sympathetic to Schoenlein, simply do not demonstrate that, objectively, Schoenlein suffered any sufficiently serious deprivation of a constitutional right or that, subjectively, the Defendants had the requisite state of mind in allowing or causing the alleged deprivation to occur. *See Wilson*, 501 U.S. at 298-99, 303 (1991); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

First, a periodically leaking ceiling causing water to puddle on a floor does not demonstrate a deprivation of the "minimal civilized measure of life's necessities." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Moreover, Schoenlein's allegations do not support a claim that either Carter or Sequeira "[knew] of and disregard[ed] an *excessive* risk to [Schoenlein's] health ...." *Farmer*, 511 U.S. at 837 (emphasis added). The water was neither an excessive risk, nor was it disregarded, as Schoenlein admits that another inmate was instructed to mop it up at least once, it accumulated only when it rained, and he was transferred from the cell after the fall when it became apparent that an injury could, and did, occur.

Second, the facts as alleged by Schoenlein do not satisfy the subjective standard of deliberate indifference, or conduct so reckless or wanton as to evince Sequeira's or Carter's

9

desire to inflict harm on Schoenlein.  Sequeira's only connection to Schoenlein's accident, as far as can be determined by the Complaint (and as discussed more fully below), is that Sequeira, as Warden, "oversees all HCF activity."  (Comp. 2 ¶ 3.)  There are no further facts alleged regarding Sequeira's involvement with Schoenlein's fall.

Carter's involvement appears to be that he knew about the leak and had in one instance ordered another inmate to mop it up.  Knowledge of a periodically leaky ceiling is not equivalent to deliberate intent to cause harm, particularly a slip and fall accident, to an inmate.  *See e.g., Tunstall v. Rowe*, 478 F. Supp. 87 (N.D. Ill. 1979) (holding that the existence of a greasy staircase, causing a prisoner's slip and fall, did not violate Eighth Amendment); *Snyder v. Blankenship*, 473 F. Supp. 1208, 1212 (W.D. Va. 1979) (failure to repair a leaking dishwasher, resulting in a pool of soapy water in which prisoner fell, did not violate Eighth Amendment); *Robinson v. Cuyler*, 511 F. Supp. 161, 163 (E.D. Pa.1981) ("[a] slippery kitchen floor does not inflict 'cruel and unusual punishments'").

Although his injury is regrettable, Schoenlein's allegations concerning his fall amount to, at best, a state common law claim of negligence or gross negligence that is not cognizable as a constitutional tort under § 1983.  *See, e.g., O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (finding

that isolated occurrences of neglect may constitute grounds for negligence or medical malpractice claim, but do not rise to level of unnecessary and wanton infliction of pain). Regardless of whether or not Schoenlein may proceed with a state tort claim for damages in the state courts, he cannot proceed here under § 1983, because his "slip-and-fall" claim does not amount to a constitutional claim for deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 837. Count I is **DISMISSED** for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1). Because it is not clear that Schoelein cannot amend this claim, this dismissal is with leave to amend.

C.   No Showing of Supervisor Liability: Sequeira is Dismissed.

A state official deprives a plaintiff "of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988). "To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal

right."  *See, e.g., Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (internal quotations omitted).

Under this rule, "[s]upervisors can be held liable [under § 1983] for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) *(citing Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)); *accord Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005).

A supervisor cannot be held liable under § 1983 on the theory of *respondeat superior*.  *See Redman v. Warden of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (*en banc*)); *see also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) ("[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983"); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (holding that the doctrine of respondeat superior was not applicable in a prisoner's claim against the director of the state Department of Corrections); *Bonner v. Lewis*, 857 F.2d 559, 565 (9th Cir. 1988) (same).

An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal

involvement," however.  *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  In other words, supervisors cannot "be held personally responsible [under § 1983] simply because [they were] in a high position of authority."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).  Thus, under § 1983, when the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

Schoenlein's conclusion that Warden Sequeira knew that his cell's ceiling leaked presumably is based only on Sequeira's supervisory position as Warden of HCF, a position in which Sequeira allegedly "oversees all HCF activity."  (Comp. 2 ¶3).  Schoenlein provides no actual facts suggesting that Sequeira personally knew of the leak.  Even if Sequeira knew that the ceiling periodically leaked, however, such knowledge would not mean that Sequeira was personally involved in Schoenlein's accident, or was deliberately indifferent to Schoenlein's health or safety.  Sequeira's responsibility for running the prison does not equate to personal liability for every accident within the prison.  Claims against Sequeira are DISMISSED for failure to state a claim, with leave granted to amend.

D.    <u>Disagreement Concerning Medical Care Does Not State a Claim.</u>

Prison officials violate the Eighth Amendment if they fail to address prisoners' medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."[2] *Estelle*, 429 U.S. at 102.  However,

> Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106; *accord Lopez*, 203 F.3d at 1131.

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion amounts to deliberate indifference,

---

[2] A medical need is serious if the failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (further citations omitted). For the purposes of this Screening Order, the court accepts that Schoenlein's knee injury is a serious medical condition.

the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see also Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) (stating that prisoner may demonstrate deliberate indifference if prison officials relied on the contrary opinion of a non-treating physician). The Ninth Circuit also recognizes that a "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Division*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Schoenlein does not allege that he was given no medical care. He admits that he was seen and treated by Dr. Dewitt on the day of the accident, by Dr. Salandra on December 27, 2007, and by Dr. Paderes on February 19, 2008. Schoenlein also states that prison nurses came to his cell on a daily basis every morning. (*See* Comp. 5A ("The morning nurse had come to plaintiffs cell at approx 8:30 am as it is the nurses usuall [sic] morning routine to do so.")) Schoenlein is therefore not alleging that he was *denied* medical care. Schoenlein is simply protesting that Dr. Paderes, after treating him, and after consulting with Drs. Salandra and Dewitt, decided there was

15

nothing seriously wrong with Schoenlein's knee, and refused to authorize outside medical care at prison expense.  (*See* Comp. 5-B ("Dr[.] Paderas [sic] stated on 2-19-08 he would have to confer with Dr[.] Dewitt and Dr[.] Salandra for a group diagnosis.  On 4-4-08, . . . Doctor [Paderes] stated, he felt nothing was wrong with the plaintiffs knee and that [he] at this time will not render medical care or treat the plaintiffs knee injury."))  This set of facts represents a disagreement between Schoenlein and the prison medical doctors about the degree of his injury and the amount or type of medical care that is required for that injury.  A disagreement between a prisoner and the prison doctor does not give rise to a constitutional violation for the denial of medical care.  Count II is DISMISSED for failure to state a claim, with leave granted to amend.

### IV. <u>CONCLUSION</u>

Schoenlein's Complaint fails to state a claim upon which relief may be granted under § 1983.  As it is not certain that amendment to the Complaint is futile, the court gives Schoenlein an opportunity to file an amended complaint that seeks to address the deficiencies identified in this order.

Specifically, the amended complaint must allege how each named defendant is personally involved in the deprivation of Schoenlein's rights.  There can be no liability under § 1983 unless there is an affirmative link or connection between a

16

defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Claims for negligence or gross negligence, even if actionable in state court, are not sufficient to prove a constitutional violation.  Finally, a disagreement between an inmate and a prison doctor, about the amount or type of medical care required does not state a claim under § 1983.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

    1.   The Complaint is DISMISSED for failure to state a claim.  Schoenlein is given until **May 30, 2008**, to file an amended complaint to cure the enumerated deficiencies in the Complaint, if possible.

    2.   The Clerk is DIRECTED to send Schoenlein a blank prisoner civil rights complaint form so that he may amend the Complaint.  The amended complaint must "reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference."  Local Rule LR10.3.  The document must bear the docket number assigned this case and must be clearly labeled "Amended Complaint."

3. Plaintiff is informed that failure to properly amend on or before **May 30, 2008**, will result in the AUTOMATIC DISMISSAL of this action for failure to state a claim and shall count as a "strike" pursuant to 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 25, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Schoenlein v. Sequeira, et al.*, Civ. No. 08-00165 SOM-BMK; Order Dismissing Complaint; dmp/Screening Orders 08/ Schoenlein 08-165 SOM (FTSC)